Albert Gordon MacRAE and Sheila MacRae, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 17123.

United States Court of Appeals Ninth Circuit.

Aug. 28, 1961.

Bernard Speisman, New York City, and Jerome B. Rosenthal, Beverly Hills, Cal., for petitioner.

John B. Jones, Jr., Acting Asst. Atty. Gen., Lee A. Jackson, Harry Baum and Norman H. Wolfe and Carolyn R. Just, Attorneys, Dept. of Justice, Washington, D. C., for respondent.

Before HAMLEY, JERTBERG and MERRILL, Circuit Judges.

JERTBERG, Circuit Judge.

Before us is a petition for review of a decision of the Tax Court of the United States, reported at 34 T.C. 20. The petitioners are husband and wife who filed joint returns on the cash basis for the taxable years 1952 and 1953. The husband, Albert Gordon MacRae, will hereinafter be called the taxpayer.

The Tax Court sustained the disallowance by the Commissioner of Internal Revenue of amounts paid by taxpayer, claimed by him to represent payments of interest on indebtedness, and hence deductible within the meaning of Section 23 of the Internal Revenue Code of

1939,[1] in the computation of taxpayer's net income for the years 1952 and 1953.

The Tax Court determined and ordered a deficiency in income tax for the taxable year 1952 in the amount of $23,998.38, and a deficiency for the taxable year 1953 in the sum of $78,584.32, and an addition to tax under Section 294 (d) (2) of the Internal Revenue Code of 1939, 26 U.S.C. § 294(d) (2), in the amount of $4,301.14.

The taxpayer urges that the Tax Court erred in holding that the prepayments [claimed by taxpayer to represent payments of interest on indebtedness] on asserted loans for the purchase and carrying of United States Treasury Notes and Federal Land Bank Bonds did not represent "interest * * * on indebtedness," and hence were not deductible. In the alternative, the taxpayer contends that the Tax Court erred in not allowing his out-of-pocket costs as an ordinary loss in a transaction entered into for profit under Section 23(e) (2),[2] or as a capital loss under Section 117(g) (2) [3] of the Internal Revenue Code of 1939.

The facts, as stipulated and as found by the Tax Court, are not assailed by the taxpayer. They are reported in 34 T.C. 20. We see no reason for extending this opinion by including them here. In short, the facts reveal a plan devised by a firm of brokers and dealers in securities designed to create sizeable "interest" deductions for high-bracket taxpayers whose principal purpose in agreeing to the plan is to create tax deductions. We recently reviewed a variant of the plan devised by the same firm, in Kaye v. Commissioner of Internal Revenue, 9 Cir., 1961, 287 F.2d 40, wherein we affirmed the decision of the Tax Court [33 T.C. 511], by relying on the teachings in Knetsch v. United States, 1960, 364 U.S. 361, 81 S.Ct. 132, 5 L.Ed.2d 128. Variants of a broadly similar plan devised by a Boston broker and dealer in securities were likewise decided against the taxpayers in Becker v. Commissioner of Internal Revenue, 2 Cir., 1960, 277 F.2d 146, 147; Lynch v. Commissioner of Internal Revenue, 2 Cir., 1959, 273 F.2d 867; Goodstein v. Commissioner of Internal Revenue, 1 Cir., 1959, 267 F.2d 127; Sonnabend et al. v. Commissioner of Internal Revenue, 1 Cir., 1959, 267 F.2d 319; and Broome v. United States, Ct.Cl.1959, 170 F.Supp. 613.

The Tax Court concluded that the transactions set forth in the findings of fact did not give rise to any purchases of Treasury notes or Federal Land Bank bonds for the taxpayer and did not involve any real indebtedness on his part or any payments or receipts of real interest, and that the payments made by taxpayer were in reality consideration for tax deductions, not for loans, hence, not deductible under Section 23(b). In essence, this is the same conclusion reached in the several above cited cases.

1. Internal Revenue Code of 1939:
"§ 23. Deductions from gross income.
"In computing net income there shall be allowed as deductions:

* * * * *

"(b) Interest.—All interest paid or accrued within the taxable year on indebtedness * * *." 26 U.S.C.1952 ed., Sec. 23.

2. Internal Revenue Code of 1939:
"§ 23. Deductions from gross income.
"In computing net income there shall be allowed as deductions:

* * * * *

"(e) Losses by individuals.—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

* * * * * * *

"(2) if incurred in any transaction entered into for profit though not connected with the trade or business; or * * *." 26 U.S.C.1952 ed., Sec. 23.

3. Internal Revenue Code of 1939:
"§ 117. [As amended by Sec. 216(c), Revenue Act of 1950, c. 994, 64 Stat. 906] Capital gains and losses—

* * * * *

"(g) Gains and losses from short sales, etc.—For the purpose of this chapter—

* * * * *

"(2) gains or losses attributable to the failure to exercise privileges or options to buy or sell property shall be considered as short-term capital gains or losses; and * * *." 26 U.S.C.1952 ed. Sec. 117.

Taxpayer contends that the Tax Court erred in reaching such conclusion, and endeavors to distinguish the instant case from the above cited cases, on the ground that the taxpayer was unaware of the mechanics employed by the lenders to finance the loans made to taxpayer. In brief, neither the taxpayer nor any representative of his was apprised by the lenders of the short selling procedure employed by them, and which were made by the lenders for their own account without collusion on the part of the taxpayer, and thus not attributable to the taxpayer. We find no merit in taxpayer's contention. As stated in Lynch v. Commissioner of Internal Revenue, supra, 273 F.2d at page 872:

"Save in those instances where the statute itself turns on intent, a matter so real as taxation must depend on objective realities, not on the varying subjective beliefs of individual taxpayers. Beyond this, it would strain credulity to the breaking point to suppose that taxpayers had no inkling that something highly unusual was going on."

In any event, regardless of taxpayer's contention, deductions of payments made as interest may be deducted only if they are in fact paid as interest on an existing indebtedness. We agree with the reasoning and the result reached by the Tax Court under the facts of this case.

Taxpayer's alternative contentions relate only to a claimed loss deduction in the taxable year of 1953 for his out-of-pocket costs in connection with the transactions above mentioned. Two different theories under which taxpayer claims to be entitled to deduct these out-of-pocket expenses are advanced. First, taxpayer argues that the deduction is authorized under Section 23(e) (2), supra; second, that the loss was attributable to his failure to exercise privileges or options to buy or sell property within the meaning of Section 117(g) (2), supra.

The Commissioner contends that we should not consider on this appeal such alternate grounds because they were not raised in the pleadings before the Tax Court. Taxpayer attempted to raise the ground under the first theory by supplemental motion to the Tax Court after the hearings before the Tax Court had been concluded but before the announcement of decision. We recognize the general rule that new issues may not be raised after the hearing by the Tax Court in the absence of good reason therefor. Vogel's Estate v. Commissioner of Internal Revenue, 9 Cir., 1960, 278 F.2d 548. On this subject see Hormel v. Helvering, 1941, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037. In that case the Court stated, 312 U.S. at page 557, 61 S.Ct. at page 721:

"There may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below. See Blair v. Oesterlein Machine Co., 275 U.S. 220, 225 [48 S.Ct. 87, 88, 72 L.Ed. 249]."

We think this case fits this exception. The claimed deduction for out-of-pocket losses arises out of the same transactions which were considered by the Tax Court. No new fact issues are presented, and it is not necessary to go beyond the findings of the Tax Court to consider the propriety of the claimed deduction. The Commissioner is not prejudiced, nor has he been denied the opportunity to present arguments against allowance thereof. Under these circumstances, we believe that justice requires that we pass upon the merits of taxpayer's contentions.

In our view, these out-of-pocket losses are not properly deductible under Section 23(e) (2). To allow such out-of-pocket expenditure as a loss incurred in a transaction entered into for profit would be inconsistent with our affirmance of the Tax Court holding that the transactions here involved were not in substance purchases of securities with borrowed money entered into for profit,

but were in reality attempts to simulate such security transactions for the purpose of artificially creating tax deductions.

While the transactions here involved created no "indebtedness" recognizable under Section 23(b), we are aware of the fact that various legal rights and obligations were created. Courts dealing with variants of the plan involved in the present case were also aware of the creation of such legal rights and obligations. Thus in Goodstein v. Commissioner of Internal Revenue, supra, the court stated:

> "However, it cannot be denied that this amount was actually expended by the taxpayer in connection with a transaction which, although it did not result in the purchase of Treasury notes or the borrowing of money, did create a bilateral contract between himself and Seaboard [the lender]." 267 F.2d at page 132.

And in Lynch v. Commissioner of Internal Revenue, supra, the court stated 273 F.2d at page 870:

> "When the week's work was completed, what was left was this: Each taxpayer was out of pocket in the sum of $29,114.61, the excess of the alleged prepayment of $117,-677.11 'interest,' item (4), over the repayment of $88,562.50 by which the 'loan' exceeded the purchase price of the Notes, item (7). Each taxpayer had a contractual right to require Gail [the lender] to deliver the $650,000 of Treasury Notes described in item (2) against payment of $653,250, with a further right to anticipate payment on the terms stated in item (3). In other words taxpayers for their payment of $29,114.61 had obtained a call on Gail for these Notes. * * * "

Thus, in Becker v. Commissioner of Internal Revenue, 2 Cir., 1960, 277 F. 2d 146, 149, it was held that out-of-pocket losses of the taxpayer in a transaction similar to the one here involved clearly fitted the language of Section 117(g) (2) in that they came about from the failure of taxpayer to call in Notes from the lender and cancel the indebtedness. We agree with the court in Becker that out-of-pocket losses are clearly "attributable to the failure to exercise privileges or options to buy or sell property", within the meaning of Section 117(g) (2).

 In our view, taxpayer is entitled to claim a deduction for out-of-pocket losses in relation to transactions which were terminated in the taxable year 1953. Since the Tax Court did not purport to determine the amount of such out-of-pocket disbursements, taxpayer's petition to review is granted to the limited extent of remanding the case to the Tax Court for a redetermination of deficiency for the taxable year 1953 in the light of this opinion.