FRANK SPINGOLO WAREHOUSE COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 76980.    Filed October 6, 1961.

*Robert E. Tout, Esq.*, for the petitioner.
*James Booher, Esq.*, for the respondent.

4

OPINION.

RAUM, *Judge:* Two separate contentions are made by the Commissioner in support of his disallowance of petitioner's claimed net operating loss deduction in 1954, both of which are fairly comprehended within his broad determination that "the deduction is not allowable within the meaning and intendment of the applicable provisions of the Internal Revenue Code (1954)." [1]  The two issues are thus stated in petitioner's opening brief:

a. Was the principal purpose of the acquisition of the corporation by its sole stockholder that of tax avoidance so as to bar the deduction under the provisions of Section 269 (except subsection c thereof) of I.R.C. 1954?

b. May single corporation offset losses incurred in one business activity against profits earned in a different business activity?   [The doctrine of *Libson Shops, Inc. v. Koehler*, 353 U.S. 382.[2]]

A negative answer to either question is fatal to petitioner's position.

1. In language comparable to that contained in the predecessor provisions of section 129 of the 1939 Code, section 269(a) of the 1954 Code,[3] which governs here, provides:

---

[1] In any event, the issues presented are plainly before us.   See *Coastal Oil Storage Co. v. Commissioner,* 242 F. 2d 396, 400 (C.A. 4).

[2] Petitioner filed a "Motion For Amendment To Answer" prior to trial seeking clarification of the issues raised.   However, when the Court learned from counsel in an informal pretrial conference that the issues stated above were the ones to be presented and was satisfied that both parties fully understood the situation it became unnecessary to take any action upon the motion.

[3] The taxable year 1954 is here involved and section 269(a) of the 1954 Code is therefore applicable.   However, the effective dates of certain other provisions of the 1954 Code which might also be pertinent make such provisions inapplicable here.   Thus, section 382(a) which would otherwise be dispositive of this case (since directly concerned with the limitation on net operating loss carryovers when a corporation is purchased and its trade or business changed) is inapplicable because it is not effective until taxable years beginning on June 22, 1954, or later.   Sec. 394(b), I.R.C. 1954.   Similarly, by its own terms section 269(c) does not apply to this proceeding since the presumption created therein "shall apply only with respect to acquisitions after March 1, 1954."

(a) IN GENERAL.—If—

    (1) any person or persons acquire * * * control of a corporation * * *

   *        *       *       *   .   *       *       *

and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then such deduction, credit, or other allowance shall not be allowed. * * *

The statutory prohibition embodied in these provisions was once thought to be inapplicable where the contested deduction or other tax benefit was claimed by the corporation whose control was acquired rather than by the acquiring person or corporation. See *British Motor Car Distributors, Ltd.*, 31 T.C. 437, 440–441. But the decision in that case was reversed by the Court of Appeals for the Ninth Circuit, *Commissioner* v. *British Motor Car Distributors, Ltd.*, 278 F. 2d 392; and the result thus finally reached has been accepted in a number of cases in this Court as well as in other courts. *Thomas E. Snyder Sons Co.*, 34 T.C. 400, affirmed 288 F. 2d 36 (C.A. 7); *Urban Redevelopment Corporation*, 34 T.C. 845, affirmed 294 F. 2d 328 (C.A. 4); *Army Times Sales Co.*, 35 T.C. 688, 702; *Temple Square Mfg. Co.*, 36 T.C. 88; *F. C. Publication Liquidating Corporation*, 36 T.C. 836; *Mill Ridge Coal Company* v. *Patterson*, 264 F. 2d 713 (C.A. 5), certiorari denied 361 U.S. 816; *James Realty Company* v. *United States*, 280 F. 2d 394, 402 (C.A. 8).

We are thus called upon to decide whether Spingolo's "principal purpose" in acquiring petitioner's stock was the avoidance of tax by obtaining the benefit of petitioner's accumulated net operating losses as a deduction against the income of the trucking business. The inquiry is a factual one, and the burden of proof was, of course, upon petitioner, as recognized by petitioner's counsel both in his opening statement at the trial and in his brief.

Naturally, in cases of this character, it is not to be expected that there will be any direct evidence of the interdicted purpose. That purpose can more readily be ascertained by a searching evaluation of all the evidence. We heard and observed on the witness stand not only Spingolo but also his former attorney George. We found some of the testimony evasive and some of it even lacking in credibility. Granted that Spingolo may have had a business reason for incorporating his trucking business—an assumption that is by no means clearly warranted on the record before us—,[4] the question is whether the acquisition of *this* corporation had as its principal purpose the avoid-

[4] Thus, one reason advanced by Spingolo for incorporating the trucking business was an alleged 15-percent interest in the enterprise supposedly owned by Spingolo's mother that presumably could be more precisely defined if it were incorporated and that somehow or other would cease to be a threat to the continuity of the business. However, petitioner's 1954 return in evidence shows Spingolo as owning 100 percent of petitioner's stock, and there is nothing in the record to show that his mother's alleged interest was ever segregated.

ance of taxes, not whether there was a business reason in general for incorporating the trucking enterprise. The mere fact that there was oral testimony attempting to suggest possible business reasons for acquiring petitioner's stock does not require us to conclude that the "principal purpose" was other than to avoid Federal income tax. We did not find such testimony convincing, and it is no more binding upon us than the oral testimony in *Army Times Sales Co.*, 35 T.C. 688, 704; *Urban Redevelopment Corporation*, 34 T.C. 845, 850–851, affirmed 294 F. 2d 328 (C.A. 4); and *Thomas E. Snyder Sons Co.*, 34 T.C. 400, 405–406, affirmed 288 F. 2d 36, 39 (C.A. 7); cf. also *Clearview Apartment Co.*, 25 T.C. 246, 253–254. Without discussing the evidence it is sufficient to state that we have carefully considered the entire record and do not believe any of the oral testimony to the extent that it attributed any purpose to Spingolo other than avoidance of Federal tax in acquiring petitioner's corporate shell. We may add also that Tout, who, it is clear to us, masterminded the entire transaction and who alone of those participating therein on Spingolo's behalf appeared to be concerned with or sophisticated in Federal tax matters, did not take the witness stand and subject himself to examination under oath.[5] His failure to testify gives further weight to our conclusion that petitioner has not carried its burden of proof, cf. *Snyder Sons Co.* v. *Commissioner*, 288 F. 2d 36, 39 (C.A. 7), and we have found as a fact that Spingolo's principal purpose in acquiring control of petitioner was the avoidance of Federal income tax by securing the benefit of a net operating loss deduction which he would not otherwise enjoy.

2. In view of the conclusion reached above, it becomes unnecessary to decide whether the doctrine underlying *Libson Shops, Inc.* v. *Koehler*, 353 U.S. 382, also requires a decision against petitioner in connection with the net operating loss deduction. However, it may be noted that strong support for the Commissioner's position on this issue is found in *Mill Ridge Coal Company* v. *Patterson*, 264 F. 2d 713 (C.A. 5), certiorari denied 361 U.S. 816; *Commissioner* v. *Virginia Metal Products, Inc.*, 290 F. 2d 675 (C.A. 3); *J. G. Dudley Co.*, 36 T.C. 1122.

*Decision will be entered under Rule 50.*

[5] As already noted, Tout was petitioner's counsel at the trial herein. He referred modestly in his opening statement to "the small part that I had in the matter," which would "be brought out fully by the witnesses," and concluded by stating that "should there remain any question in the Court's mind, I will certainly cooperate to put forth any information that might be helpful." However, the Court is not required to tell the parties what witnesses to call, and if there is any failure to present crucial witnesses, the situation is not helped by any such anticipatory statement as was made by counsel herein. Furthermore, if his failure to testify was occasioned by difficulties or embarrassment growing out of his being counsel in the case, the situation was one of his own making, and he could in any event have removed himself as counsel.